1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John C. Hernandez, | No. CV-09-621-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security Administration, | |
| Defendant. | |

On September 7, 2004, Plaintiff John Hernandez was admitted to Banner Good Samaritan hospital for suicidal ideation caused by auditory hallucinations telling Plaintiff to hurt himself and his roommate. Plaintiff had been hearing voices in his head for two weeks and suffered from depression, hopelessness, and decreased energy. Plaintiff reported suffering for years from anxiety, panic attacks, and post-traumatic stress disorder from a prior sexual assault. He was given anti-psychotic medication and received a mental health evaluation from Value Options, a provider of behavioral healthcare services. Plaintiff was discharged after three days in the hospital. Dkt. #7A, Tr. 295-98.

Plaintiff applied for social security benefits on October 28, 2004, claiming to be disabled since the date of his admission to the hospital. Tr. 455-65. The applications were denied. Tr. 37-40, 453-56. A hearing before an Administrative Law Judge ("ALJ") was held on March 12, 2007. Tr. 469-94. The ALJ issued a written decision two weeks later, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 44-51. The Appeals

1 Council remanded the case for further proceedings (Tr. 69-71), and a second hearing was
2 held on December 4, 2007 (Tr. 495-519). The ALJ issued a new decision on January 22,
3 2008, again finding Plaintiff not disabled. Tr. 16-25. This decision became Defendant's
4 final decision when the Appeals Council denied review. Tr. 4-6. Plaintiff then commenced
5 this action for judicial review pursuant to 42 U.S.C. § 405(g). Dkt. #1. For reasons that
6 follow, the Court will reverse Defendant's decision and remand the case for an award of
7 benefits.

**I.     Standard of Review.**

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Substantial evidence is "'more than a mere scintilla, but less than a preponderance.'" *Id.* (citation omitted). "It is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.*

**II.    Analysis.**

Whether a claimant is disabled is determined using a five-step evaluation process. The claimant bears the burden in steps one through four. To establish disability, the claimant must show (1) he is not currently working, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. At step five, the Commissioner bears the burden of showing that the claimant has the RFC to perform other work. 20 C.F.R. §§ 404.1520, 416.920.

Plaintiff has met his burden. The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date. Tr. 18-19, ¶ 2. The ALJ

further found that Plaintiff has a combination of severe impairments: bipolar disorder with major depression, schizophrenia with auditory hallucinations, anxiety disorder with panic attacks and agoraphobia, personality disorder with social phobia and avoidant personality characteristics, and ongoing cannabis use. Tr. 19, ¶ 3.[1] While the ALJ concluded that Plaintiff's impairments do not meet or equal a listed impairment (Tr. 19-20, ¶ 4), he also found that Plaintiff is not able to perform his past work in construction sales and as a customer service representative and medical billing clerk (Tr. 23, ¶ 6). At step five, the ALJ concluded that Plaintiff is not disabled because he has the RFC to perform light unskilled work with no public interaction. Tr. 21-23, ¶ 5.

Plaintiff argues that the ALJ erred by rejecting the opinions of a treating physician (Dr. Pyevich) and an examining physician (Dr. Oizumi) in favor of non-examining reviewers. Plaintiff further argues that the ALJ failed to properly evaluate his credibility. Finally, Plaintiff argues that the ALJ erred by determining RFC without first making the requisite function-by-function assessment of Plaintiff's work-related abilities. Dkt. ##18, 28. Defendant contends that the ALJ did not err and his decision is supported by substantial evidence. Dkt. #24.

**A.    Treating Physician Dr. Danielle Pyevich.**

Dr. Pyevich, a psychiatrist with Value Options, began treating Plaintiff in May 2007. Tr. 377-78. On November 30, 2007, Dr. Pyevich completed a medical assessment of Plaintiff's ability to perform work-related activities. She found several moderately severe limitations. Specifically, Plaintiff's mental impairments seriously affect his ability to understand, carry out and remember instructions, to relate to other people, to respond appropriately to co-workers and customary work pressures, to complete a normal workday without interruptions, and to perform at a consistent pace without unreasonable rest periods. Tr. 366-67.

The ALJ rejected Dr. Pyevich's opinions, finding instead that Plaintiff had no more

---

[1] The cannabis use was found not material to the issue of disability. *Id.*

1 than moderate limitations. Tr. 20. The ALJ found that Dr. Pyevich did not personally treat
2 Plaintiff. Tr. 20. Defendant admits this is incorrect. Dkt. #24 at 22.

3       The ALJ's error is significant. As Plaintiff's treating physician, Dr. Pyevich is
4 "employed to cure and has a greater opportunity to know and observe [Plaintiff] as an
5 individual." *McCallister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). Her opinions
6 regarding the severity of Plaintiff's impairments are therefore entitled to "special weight,"
7 and if the ALJ chooses to disregard them, "'he must set forth specific, legitimate reasons for
8 doing so, and this decision itself must be supported by substantial evidence.'" *Embrey v.*
9 *Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408
10 (1986)); *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ can meet this burden "by
11 setting out a detailed and thorough summary of the facts and conflicting clinical evidence,
12 stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715,
13 725 (9th Cir. 1998) (citing *Embrey*, 849 F.2d at 421). Plaintiff argues that the ALJ has not
14 met his burden. Dkt. ##18 at 22-27, 28 at 2-6. Plaintiff is correct.

15       The ALJ states that "the Value Options treatment records show the claimant was
16 treated with medication and the treatment records do not reflect the bizarre behavior alleged
17 by the claimant and his roommate." Tr. 20. The ALJ does not explain how the use of
18 medication undermines Dr. Pyevich's assessment. With respect to the "bizarre behavior,"
19 it appears that the ALJ is referring to an incident described in a disability report completed
20 by Plaintiff's roommate, Randy LaMarsh. Mr. LaMarsh stated that during a trip to
21 California, Plaintiff "jumped out of the car and started walking down the freeway." Tr. 156.
22 That trip occurred in late 2004. Tr. 156. The fact that Plaintiff may have improved enough
23 to stop engaging in such extreme behavior, or that any such behavior is not noted in clinical
24 records, does nothing to detract from Dr. Pyevich's assessment of Plaintiff's work-related
25 abilities in November 2007.

26       The ALJ finds that the "great weight" of the State agency examiners determined that
27 Plaintiff "has no more than moderate limitations on his ability to perform work related
28 activities." Tr. 20. The ALJ does not explain the basis for this finding, nor does he cite any

evidence to support it. Plaintiff notes, correctly, that Dr. Joelle Oizumi, a State agency examining psychologist, assessed Plaintiff with greater than moderate limitations. In particular, Dr. Oizumi found that Plaintiff had marked limitations (1) in his ability to perform within a schedule, maintain regular attendance, and be punctual within customary tolerances, (2) in his ability to complete a normal workday without interruptions and to perform at a consistent pace without unreasonable rest periods, (3) in his ability to get along with coworkers and respond appropriately to changes in the work setting, and (4) in his ability to travel in unfamiliar places or use public transportation. Tr. 235-40. Substantial evidence does not support the ALJ's conclusion that the "great weight" of the State agency examiners determined that Plaintiff has no more than moderate limitations.

Finally, the ALJ states that treatment records prepared at Magellan Health Services consistently report global assessment of functioning ("GAF") scores of 55-60. Tr. 20. A GAF score provides a rough estimate of the claimant's overall level of functioning. *See Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999). As a global reference intended to aid in treatment, "a GAF score does not itself necessarily reveal a particular type of limitation and 'is not an assessment of a claimant's ability to work.'" *Stokes v. Astrue*, No. 8:08-cv-1657-T-23HTS, 2009 WL 2216785, at *7 (M.D. Fla. July 23, 2009) (citations omitted). Indeed, "GAF scores are of very limited usefulness due to their failure to translate into concrete functional limitations." *Id.*; *see* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings."). Because GAF scores are not an assessment of Plaintiff's ability to work, the scores cannot contradict Dr. Pyevich's assessment, which directly addresses this question. *See Wallace v. Astrue*, No. 2:07cv850-WC, 2008 WL 2428926, at *4 (M.D. Ala. June 12, 2008).

Dr. Pyevich is Plaintiff's treating physician. To properly reject her opinions about Plaintiff's work-related abilities, the ALJ "must do more than offer his own conclusions. He

must set forth his own interpretations and explain why they, rather than [Dr. Pyevich's], are correct." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). The ALJ has failed to provide the requisite "detailed, reasoned, and legitimate rationales for disregarding [Dr. Pyevich's] findings." *Embrey*, 849 F.2d at 422. His rejection of her opinions was erroneous.

### B. Dr. Joelle Oizumi.

Dr. Oizumi examined Plaintiff at the behest of the State agency in February 2005. Tr. 231-33. Dr. Oizumi subsequently prepared a written assessment of Plaintiff's ability to do work-related activities. As explained more fully above, Dr. Oizumi found several marked limitations. Tr. 235-40. Plaintiff argues that the ALJ erred in rejecting Dr. Oizumi's opinions. Dkt. ##18 at 27-32, 28 at 6-7. The Court agrees.

The ALJ asserts, in conclusory fashion, that Dr. Oizumi's assessment "is not supported by the claimant's treatment records" and "is outweighed by the weight of the state agency reviewing sources." Tr. 22. As the Ninth Circuit has explained, however, "conclusory reasons will not justify an ALJ's rejection of a medical opinion[.]" *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citing *Embrey*, 849 F.2d at 421-22). Moreover, the opinions of the non-examining sources cannot, by themselves, "constitute substantial evidence that justifies the rejection of the opinion of [Dr. Oizumi]." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

The ALJ further asserts that Plaintiff's condition "significantly improved" after his hospital stay in September 2004 (Tr. 22), but the ALJ cites no supporting evidence. The ALJ finds that if Plaintiff's condition had not been "adequately treated, he would not have been released as quickly as he was." Tr. 22. This finding is belied by the record. Plaintiff discharged himself "against medical advice." Tr. 296. His long-term prognosis was "guarded," and he was instructed to obtain outpatient treatment from Value Options. Tr. 298. Given Plaintiff's severe mental impairments, his decision to leave the hospital after only three days of treatment does not undermine the severity of those impairments. "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter*, 166 F.3d at 1299-1300 (citations omitted).

1  The ALJ rejected Dr. Oizumi's assessment on the ground that "it appears to be based on claimant's subjective allegations[.]" Tr. 22. Because there is no evidence of malingering or deception on the part of Plaintiff, however, Dr. Oizumi should not be faulted for believing Plaintiff's complaints. *See Regennitter*, 166 F.3d at 1300.

The ALJ generally should give more weight to the opinion of an examining physician than to opinions of consulting sources. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. Although the ALJ has provided some facially cogent reasons for rejecting the opinions of Dr. Oizumi, those reasons are not supported by substantial evidence.

**C.  Plaintiff's Testimony.**

Plaintiff testified that he is unable to work due to poor concentration and memory, anxiety and panic attacks, his agoraphobia and difficulty being around other people, and confusion caused by his bipolar disorder and schizophrenia. Tr. 501-07; *see* Tr. 481-83, 487-88. The ALJ found "not fully credible" Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms. Tr. 22.

The ALJ evaluated Plaintiff's testimony using the two-step analysis established by the Ninth Circuit. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Applying the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), the ALJ determined that Plaintiff's impairments could reasonably produce some of the symptoms alleged. Tr. 22. Given this conclusion, and because there is no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for his adverse credibility finding. *Smolen*, 80 F.3d at 1281. The ALJ asserts several reasons for finding Plaintiff not entirely credible. None is convincing.

First, the ALJ finds that Plaintiff's testimony about "his limitations and their effect on his ability to work are not supported by his statements concerning his activities of daily living[.]" Tr. 22. An ALJ may consider a claimant's daily activities in assessing credibility, but "[t]his line of reasoning clearly has its limits[.]" *Fair v. Bowen*, 885 F.2d 597, 603 (9th

- 7 -

Cir. 1989). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferrable to what might be the more grueling environment of the workplace[.]" *Id.* (citations omitted). An ALJ may reject testimony based on daily activities where the ALJ makes specific findings that those activities are transferrable to the work setting. *See id.*; *Orn*, 495 F.3d at 639.

Citing disability reports completed by Plaintiff and his roommate (Tr. 140-47, 149-56), the ALJ finds that Plaintiff "prepares sandwiches and frozen meals daily, does the laundry and ironing on a weekly basis, and watches television daily." Tr. 19, 22. The ALJ further finds that Plaintiff "drives a car, uses a telephone, checks on family members, shops for food, counts change, uses a checkbook, does the laundry, irons, and dusts." Tr. 19-20. The ALJ concludes that these tasks are simple, unskilled, and repetitive "work activities." Tr. 20.

Plaintiff argues, correctly, that the ALJ fails to explain how Plaintiff's daily activities translate into an ability to perform in a work setting. Dkt. #18 at 34. The ALJ lists Plaintiff's activities (Tr. 19-20), but does not discuss the limited nature of those activities or the difficulty Plaintiff has leaving the house. Consistent with his hearing testimony (Tr. 500-09), Plaintiff reported that he does not go outside very often because he gets lost and people scare him and make him nervous (Tr. 143), that he actually fears going out of the house (Tr. 146), that he shops for food only one or two times a month (Tr. 143), and that since the onset of his condition he "stay[s] at home almost always" (Tr. 145). Mr. Marsh reported similar restrictions on Plaintiff's ability to function outside the home. *See* Tr. 152 ("He is afraid to go out. Gets really confused."); Tr. 153 ("Avoids going out because he is afraid."); Tr. 154 ("We used to go out weekly, groceries shopping etc. He [now] rarely leaves the house.").

This Circuit has made clear that the mere fact that a claimant engages in daily activities such as grocery shopping and driving a car "does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603); *see Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (a claimant need

- 8 -

not "vegetate in a dark room" to be eligible for benefits). The ALJ "developed his evidentiary basis by not fully accounting for the context of the materials or all parts of the testimony and reports." *Reddick*, 157 F.3d at 722. The record, considered as a whole and in the proper context, shows that the ALJ failed to provide a convincing reason for concluding that Plaintiff's daily activities are inconsistent with his hearing testimony. *See Orn*, 495 F.3d at 639 (ALJ erred in making adverse credibility finding where the claimant's activities did not contradict his other testimony and were not transferable work skills); *Benecke v Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (rejecting ALJ's adverse credibility finding where it was based in large part on the claimant's "ability to carry out certain routine tasks"); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (claimant's family relationships and activities were not convincing evidence that the claimant could "function normally in work and social settings").

Second, the ALJ notes that Mr. Marsh "admitted to traveling to California, which diminishes the claimant's credibility." Tr. 22. The ALJ does not discuss the nature of the trip or otherwise explain how it impeaches Plaintiff's testimony. "Several courts, including [this Circuit], have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722 (citations omitted). Moreover, as the ALJ recognized earlier in his decision (Tr. 20), Plaintiff experienced an episode of decompensation on the trip when he jumped out of the car and started walking down the freeway (Tr. 156). The trip to California is not a convincing reason for disbelieving Plaintiff about the severity of his symptoms. *See Beloit v. Astrue*, No. CV 06-2009-PHX-EHC, 2008 WL 752616, at *13 (D. Ariz. Mar. 19, 2008) (fact that the claimant visited Rocky Point a few weeks before the hearing was not a sufficient reason to discredit his testimony).

Third, the ALJ finds, without explanation, that Plaintiff's testimony is not supported by the "medical evidence considered as a whole" and that "most of the claimant's treating physicians" have not imposed disabling limitations. Tr. 22. "[G]eneral findings are an insufficient basis to support an adverse credibility determination." *Holohan v. Massanari*,

246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ has failed to meet his burden of specifically "identify[ing] what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. In addition, the latter finding – that most treating physicians have not imposed disabling limitations – is undermined by the ALJ's failure to recognize Dr. Pyevich as a treating physician (Tr. 20).

Defendant notes that the ALJ cites various medical records. Dkt. #24 at 31-32. But the ALJ does not explain, and it is not otherwise clear to the Court, how those records support an adverse credibility finding. The Court "cannot affirm the decision of [the ALJ] on a ground that the [ALJ] did not invoke in making [his] decision." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

In summary, the reasons the ALJ provided for finding Plaintiff not credible are neither convincing nor supported by substantial evidence.

### D. The RFC Determination.

The Appeals Council remanded the case in part because the ALJ's initial RFC finding (Tr. 47-49) did not "contain a function-by-function assessment of the claimant's physical and mental capabilities, as required by Social Security Ruling 96-8p." Tr. 69. SSR 96-8p requires that the ALJ "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a *function-by-function basis*[.]" SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (emphasis added). These functions include, among other things, "responding appropriately to supervision, co-workers, and work pressures in a work setting[.]" 20 C.F.R. §§ 404.1545(c), 416.945(c). Only after an appropriate function-by-function assessment "may RFC be expressed in terms of the exertional levels of work[.]" SSR 96-8p at *1; *see Reed v. Massanari*, 270 F.3d 838, 843 n.2 (9th Cir. 2001); *Washnieski v. Astrue*, No. 07-CV-598, 2008 WL 3981987, at *6 (E.D. Wis. Aug. 22, 2008) ("Under SSR 96-8p, the ALJ must find the claimant's functional limitations on a function-by-function basis *before* determining the RFC.") (emphasis in original).

The ALJ acknowledged his obligations under SSR 96-8p, but failed to meet them. At step three of the evaluation process, the ALJ discussed the "paragraph B" functional criteria

1  identified in section 12.00 of the listing of impairments: activities of daily living, social
2  functioning, concentration, persistence or pace, and episodes of decompensation. Citing SSR
3  96-8p, the ALJ explicitly recognized that the RFC assessment used at step five of the
4  evaluation process "requires *a more detailed assessment by itemizing various functions*
5  *contained in the broad categories found in paragraph B[.]*" Tr. 20 (emphasis added).
6  Contrary to the ALJ's assertion (Tr. 20), he did not translate the paragraph B criteria into
7  specific work-related functions in his RFC determination (*see* Tr. 21-23).

8  While the ALJ rejected (erroneously) the functional assessment prepared by Dr.
9  Oizumi (Tr. 235-40), he failed to set forth his own functional assessment before determining
10 Plaintiff's RFC. Tr. 22-23. This constitutes legal error. *See* SSR 96-8p; *Washnieski*, 2008
11 WL 3981987, at *6 ("the ALJ erred by failing to conduct a function-by-function assessment
12 of Washnieski's abilities"); *Edwards v. Astrue*, No. 07-2157-KHV, 2008 WL 1766948, at
13 *8 (D. Kan. Apr. 15, 2008) (ALJ's failure to perform a function-by-function assessment
14 rendered "her decision susceptible of the errors described in SSR 96-8p").

15 Defendant asserts that a functional assessment is implicit in the ALJ's finding that
16 Plaintiff can perform light work "with no requirement that he interact with the public"
17 (Tr. 23). Dkt. #24 at 33. SSR 96-8p requires more than implicit findings. The ALJ "must
18 *discuss* the individual's ability to perform sustained work activities in an ordinary work
19 setting on a regular and continuing basis . . . and *describe* the maximum amount of each
20 work-related activity the individual can perform[.]" SSR 96-8p at *7 (emphasis added); *see*
21 Tr. 69 (requiring the ALJ to comply on remand with the "narrative discussion" requirements
22 of SSR 96-8p).

23 **E.  The Decision to Remand for Further Proceedings or an Award of Benefits.**

24 Having considered the record as a whole, the Court concludes that Defendant's
25 decision denying benefits should be reversed because it is based on legal error and is not
26 supported by substantial evidence. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198
27 (2008). This Circuit has held that evidence should be credited as true, and an action
28 remanded for an award of benefits, where (1) the ALJ has failed to provide legally sufficient

reasons for rejecting evidence, (2) no outstanding issues remain that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *See, e.g.*, *Varney v. Sec'y of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007).

After applying the credit-as-true rule to the improperly discredited evidence, no outstanding issue remains to be resolved before determining that Plaintiff is entitled to benefits. The vocational expert testified that a person with the functional limitations found by Drs. Pyevich and Oizumi would not be able to work. Tr. 511-14. Defendant does not disagree with this conclusion. Because it is clear that the ALJ would be required to find Plaintiff disabled, *see Benecke*, 379 F.3d at 593-95, the Court will remand the case for an award of benefits. *See Orn*, 495 F.3d at 640 (remanding for an award of benefits where it was "'clear from the record that the ALJ would be required to determine the claimant disabled'") (citation omitted); *see also D'Angelo v. Astrue*, No. CV-06-3055-PHX-EHC, 2007 WL 4617186, at *9 (D. Ariz. Dec. 27, 2007) (remanding for an award of benefits where the vocational expert testified that the claimant's limitations would preclude all work).

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **reversed**.
2. The Clerk is directed to remand the case for an award of benefits.

DATED this 15th day of January, 2010.

_____
David G. Campbell
United States District Judge